IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| REVA FRANCIS, | ) |
| | ) |
|           Petitioner, | ) |
| | ) |
| v. | )   Case No. 07-0140-CV-W-ODS |
| | ) |
| JENNIFER MILLER, et al.,[1] | ) |
| | ) |
|           Respondents. | ) |

<u>ORDER AND OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Pending is Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. After reviewing the Record and the parties' arguments, the Court concludes the Petition must be denied.

## I. BACKGROUND

Petitioner was convicted in April 2000 of murder in the second degree and armed criminal action by a jury in Johnson County, Missouri. She was sentenced by the Honorable Joseph P. Dandurand to consecutive terms of imprisonment of twenty-three years for murder in the second degree and five years for armed criminal action. Petitioner is currently serving these sentences in the custody of Respondent at the Chillicothe Correctional Center in Chillicothe, Missouri.

The charges in Petitioner's case resulted from a domestic incident. On August 18, 1998, Petitioner and her husband, Anthony ("Tony") Francis, became involved in an argument in their home in Cass County, Missouri. At some point, Petitioner told her husband that she had put a gun kept in the house in her purse, so that she could remove it from the home. She told her husband that she did not like the gun in the house. According to Petitioner, this angered Tony and he tried to get the gun out of her purse. Petitioner's alleges that her hand was in the purse too, and the ensuing struggle

---

[1] Because Petitioner is challenging a sentence to be served in the future, Attorney General Jeremiah W. Nixon is also a proper party respondent.

caused the gun to go off accidently.  Tony fell over the table and onto a chair.  The gun went off again.

The autopsy revealed that Tony suffered gunshot wounds to the back of the head, left shoulder and chest, caused by two bullets.  When officers arrived at the scene, Petitioner told them it was all an accident.  Officers found Petitioner's purse; there was a hole in the side of the purse and subsequent forensic tests showed that the muzzle of the gun was in contact with the wall of the purse at the time it was fired.  The gun had a trigger pull of 15 pounds, which is considered a "heavy trigger pull."  There was testimony at trial that a loosely held automatic weapon is unlikely to fire a second time and is likely to jam.  Petitioner was taken into custody.  Petitioner always maintained that both shots were accidents when questioned by the police.  However, at one point during questioning officers asked Petitioner to show them how the second shot had been fired.  An officer testified that when Petitioner demonstrated how the gun discharged the second time, it appeared that Petitioner made a grasping motion with her hand as if to fire the gun again.

Petitioner was indicted in the Circuit Court of Cass County with the offenses of murder in the first degree and armed criminal action.  She pleaded not guilty to both counts.  Petitioner retained Randell K. Wood of Springfield, Missouri, to represent her at her trial.  Mr. Wood was assisted at trial by Kansas City lawyers Willard Bunch and Brian Gepford.  Following a change of venue to Johnson County, Missouri, Petitioner proceeded to trial on April 3, 2000, before Judge Dandurand.

After the jury was sworn in and the prosecutor gave an opening statement, Mr. Wood delivered an opening statement on Petitioner's behalf.  Mr. Wood told the jury that Petitioner would take the stand and explain what happened the day of the shooting.  He also told the jury that Petitioner would tell them that her husband abused her throughout their marriage and that the abuse started getting worse in the months leading to the shooting.  He said Petitioner would tell them that she did not intend to shoot her husband.

On the second day of trial, after only calling nine witnesses, the prosecution rested.  The following morning, Mr. Wood rested the defense's case without calling any

witnesses. The trial court then insisted that Petitioner take the stand and make a record waiving her right to testify on her own behalf. The court specifically asked Petitioner whether she understood that the jury might hold it against her if she did not testify because her attorney had told them that she would. Petitioner stated that she understood.

On April 5, 2000, after five hours of deliberations, the jury returned a verdict finding Petitioner guilty of the lesser offense of murder in the second degree and of armed criminal action. The jury recommended sentences of twenty-three years and five years, respectively, on the two counts. Before Petitioner's formal sentencing, mental health expert, Dr. William Logan, issued a report finding that, in this professional judgment, Petitioner suffered from Battered Woman's Syndrome ("BWS") and Post-Traumatic Stress Disorder ("PTSD"). Dr. Logan also concluded that the second shot was fired in self-defense. Although Dr. Logan first interviewed Petitioner a few days before trial commenced, he did not issue his report and findings until after the trial was concluded.

Petitioner's convictions were affirmed on direct appeal by the Missouri Court of Appeals, Western District, in State v. Francis, 60 S.W.3d 662 (Mo. Ct. App. 2001). The Court of Appeals remanded the case to the trial court for re-sentencing so that the court could consider Petitioner's evidence in mitigation of punishment that she suffered from BWS and PTSD. Judge Dandurand re-sentenced Petitioner to the same terms of imprisonment after receiving into evidence Dr. Logan's report diagnosing Petitioner with BWS and PTSD.

Petitioner filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. Rule 29.15 on December 18, 2000. An evidentiary hearing was conducted on her 29.15 motion on December 20, 2002, before Judge Dandurand. Petitioner presented the testimony of Mr. Wood and co-counsel Gepford. Co-counsel Bunch testified by way of deposition. Petitioner also testified on her own behalf. Petitioner also presented the written report and findings of Dr. Logan. On November 7, 2003, Judge Dandurand issued findings of fact and conclusions of law denying Petitioner's motion for post-conviction relief. Petitioner appealed; the Missouri Court of Appeals, Western District,

affirmed the motion court's denial of relief in an opinion on December 7, 2005.  See Francis v. State, 183 S.W.3d 288 (Mo. Ct. App. 2005).  After transfer to the Missouri Supreme Court was denied, the mandate issued on March 2, 2006.  Petitioner commenced the present action by filing a petition for writ of habeas corpus on February 23, 2007.

## II.  DISCUSSION

Petitioner raised two claims of ineffective assistance of counsel in her Rule 29.15 proceeding which are the issues in this habeas corpus action: (1) whether Mr. Wood was ineffective in failing to investigate and present available evidence at trial that Petitioner suffered from BWS and PTSD, and (2) whether Mr. Wood was ineffective in failing to present any defense through the testimony of Petitioner after telling the jury in opening statements that Petitioner would testify that the shooting was an accident.[2]

*A. Standard of Review*

An application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

---

[2] Petitioner's Amended Petition for Habeas Corpus also raised a due process challenge to the prosecutor's closing argument.  However, as Respondent pointed out, because the claim was not included in Petitioner's original petition, it was presented outside the one year time frame in which a petition for writ of habeas corpus must be filed.  Petitioner's Traverse admits the claim is untimely, concedes that review of the claim is barred, and therefore, abandons this claim for relief.

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."*

Shafer v. Bowersox, 329 F.3d 637, 646-47 (8th Cir. 2003) (emphasis added) (quoting Williams v. Taylor, 529 U.S. 362, 405, 411, 413 (2000)). In addition, the Court must defer to the state courts' findings of fact, presuming them to be correct unless they are not fairly supported by the record. Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002).

*B. Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

5

Id.  Failure to satisfy both prongs is fatal to the claim.  Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).  "An ineffective assistance of counsel claim is a mixed question of law and fact."  McReynolds v. Kemna, 208 F.3d 721, 723 (8th Cir. 2000).  Consequently, the state courts' findings of historical fact are entitled to a presumption of correctness, and their application of Strickland to those facts must stand unless they applied those standards in an unreasonable manner.

i. Failure to investigate and present evidence of BWS and PTSD

Petitioner's first ground for relief is her claim that she received ineffective assistance of counsel because Mr. Wood did not investigate and present testimony from Dr. Logan.  While Mr. Wood knew that Petitioner had been abused by her husband and knew that Dr. Logan could conduct a mental health evaluation of Petitioner with sufficient time before trial to present a battered spouse defense, Mr. Wood did not contact Dr. Logan until a few days before trial.  As a result, Dr. Logan was unable to complete his evaluation in time to present his findings to the jury.  Petitioner suggests that Dr. Logan could have testified that the first shot was an accident and the second shot was in self-defense.

As a threshold matter, Respondent argues Petitioner's claim that Mr. Wood failed to investigate a battered spouse defense is barred by procedural default, in that the word "investigate" was not included when the claim was raised in Petitioner's Rule 29.15 motion.  Rather, Petitioner's motion only alleged a failure to *present* Dr. Logan's testimony.  The Missouri Court of Appeals determined that its review of a "failure to investigate" claim was barred from review.

To avoid a procedural default, the habeas petitioner must fairly present his claim to the state court, that is, he must present the same facts and legal theories to the state court that he later presents to the federal courts.  Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996).  In addition, it is not enough for Petitioner to simply raise the arguments; they must be raised in a manner that complies with state law.  Failure to do so constitutes a

6

procedural default. Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998).

The Court holds that Petitioner's first claim is not barred by procedural default because the substance of a "failure to investigate" claim was fairly presented and considered by the Missouri courts. The 29.15 motion court, in addressing this claim, explicitly noted that the claim involved an allegation that "counsel was ineffective in failing to investigate an alleged mental disease or defect." (Rule 29.15 Motion Legal File at 25). Additionally, while noting the procedural defect, the Court of Appeals considered Mr. Wood's investigation, stating that despite Mr. Wood's failure to promptly contact Dr. Logan, the evidence suggested that he did investigate the possibility of a battered spouse defense by obtaining records and interviewing witnesses that corroborated that Petitioner was abused by her husband. The court further noted that Mr. Wood knew he could obtain expert testimony supporting the defense before trial and believed he could get a jury instruction for the defense. Accordingly, the Court finds that Petitioner's "failure to investigate" claim was fairly presented and considered by the state courts, allowing this Court to address its merits.

The state courts ruled that Mr. Wood's performance in not pursuing a battered spouse defense through the testimony of Dr. Logan was a reasonable trial strategy. The Court of Appeals found that Petitioner's trial counsel knew the battered spouse defense was available and considered presenting it. However, trial counsel testified that there were other viable defenses, including accident. Furthermore, during pre-trial hearings, the trial court ruled that Petitioner would have to choose a defense, and could not proceed with inconsistent defenses.[3] Pre-Trial Hearing Transcript pp. 6-13.

Accordingly, Petitioner's trial counsel was forced to choose between the defense of accident, or the defense of battered spouse syndrome. Petitioner's repeated assertion to police officers that the shooting was accidental made her counsel's decision

---

[3] Whether this was a correct ruling was not appealed or included as an issue in Petitioner's Rule 29.15 motion.

to present the defense of accident reasonable.[4] As a result, her counsel did not certify a defense of battered spouse syndrome as required by § 552.063, RSMo. Furthermore, exclusively pursuing battered spouse syndrome would have been problematic. "[E]vidence of battered spouse syndrome is not in and of itself a defense to a murder charge . . . ." State v. Edwards, 60 S.W.3d 602, 613 (Mo. Ct. App. 2001). Instead, battered spouse syndrome augments a claim of self-defense. Id. As such, Petitioner would still have been required to establish the four elements of a self-defense claim:

> (1) absence of aggression or provocation on the defender's part; (2) real or apparent necessity for the defender to kill to save herself from an immediate danger of serious bodily injury or death; (3) reasonable cause for the defender's belief in such necessity; and (4) an attempt by the defender to do all within her power consistent with her personal safety to avoid the danger and the need to take a life.

State v. Avery, 120 S.W.3d 196, 200-01 (Mo. banc 2003). Petitioner's evidence of battered spouse syndrome could be used only to support element three; therefore, Petitioner would still have been required to prove the other three elements independently. State v. Pisciotta, 968 S.W.2d 185, 189 (Mo. Ct. App. 1998). Furthermore, in selecting a battered spouse defense, Petitioner would have had to explain her repeated statements to police that both shots were accidental. Because Mr. Wood's and co-counsel's pursuit of one defense over the other was reasonable trial strategy, the state courts' decision denying Petitioner's motion for post-conviction relief on this ineffective assistance of counsel claim was reasonable under § 2254(d). Because Petitioner did not establish that Mr. Wood's performance was deficient, the Court does not reach the issue of prejudice.

### ii. Failing to present Petitioner's testimony after telling jury Petitioner would testify

Petitioner's second claim of ineffective assistance of counsel is based on Mr. Wood's opening statements to the jury, in which he stated that Petitioner would testify

---

[4] Petitioner claims that by resting the case without presenting any evidence, her counsel actually presented no defense at all. However, an accident theory of the case was alluded to by Mr. Wood during opening statements and pursued through cross-examination.

8

that the shooting was an accident and that she had been abused by the victim, and Petitioner's subsequent failure to testify. Petitioner argues there was no unforeseen event that could justify Mr. Wood's decision to advise Petitioner not to testify. From pretrial discovery, Mr. Wood knew the prosecution had witnesses who would testify that, prior to the shooting, Petitioner had stated that she wished her husband was dead.[5] Additionally, Mr. Wood had been informed by co-counsel Brian Gepford, that the Cass County's prosecutor's office often holds back a substantial number of witnesses for rebuttal.

At the 29.15 Motion hearing, Petitioner presented the testimony of Mr. Bunch and Mr. Gepford. Their testimony indicated that the defense team was disorganized and that Mr. Wood did not put Petitioner on the stand out of fear, rather than sound strategy. Mr. Wood testified that he was surprised by the State's decision to rest its case without presenting evidence that Petitioner had wished her husband dead prior to the shooting. On a claim of ineffective assistance of counsel, "the motion court is free to believe or disbelieve any evidence, whether contradicted or disputed, including the movant's testimony, and [the court] defer[s] to the motion court on matters of credibility." Krider v. State, 44 S.W.3d 850, 858 (Mo. Ct. App. 2001). The motion court found trial counsel's performance to be competent and his decision to advise Petitioner not to testify to be based on reasonable trial strategy; the motion court's ruling thereby includes an implicit finding that Mr. Wood's testimony was credible. In considering whether Mr. Wood's advice to Petitioner was reasonable, the Court of Appeals considered whether there was an unexpected or unforeseeable event that justified altering the trial strategy in light of the negative impact on the jury potentially resulting from not putting Petitioner on the stand. The court found that there was sufficient testimony at the motion court hearing to establish that Mr. Wood was

---

[5] The Court of Appeals decision states that the prosecution's evidence would have shown that Petitioner had expressed, prior to the day of the shooting, a desire to kill her husband. While her statement that she wanted to see him dead is arguably less incriminating than a wish to kill him herself, it does not change the reasonableness of Mr. Wood's decision to rest the case to keep the prosecution from presenting this evidence on rebuttal.

9

surprised by the State's decision to rest its case, despite the fact that Mr. Wood knew the prosecutor's predilection for holding back witnesses for rebuttal.

The court found that Mr. Wood had no way of knowing which witnesses would be reserved for rebuttal. Therefore, once the prosecution rested, Mr. Wood had to make a difficult decision: either put Petitioner on the stand, thereby allowing the jury to hear evidence that Petitioner had wished her husband dead,[6] or advise Petitioner not to testify. Mr. Wood advised Petitioner not to testify on her own behalf despite his promises to the jury that she would. He discussed the advantages and disadvantages of testifying with Petitioner and her family for several hours. Mr. Gepford was adamant that Petitioner should testify. Petitioner chose to rely on the advise of Mr. Wood and decided not to testify. The trial court specifically asked Petitioner whether she understood that the jury might hold it against her if she did not testify because her attorney had told them that she would. Petitioner stated that she understood. The Court of Appeals found that Mr. Wood's decision to advise Petitioner not to testify was reasonable because it kept the prosecution from presenting damaging rebuttal testimony; this Court agrees with the Court of Appeals.

### III. CONCLUSION

For the foregoing reasons, Petitioner's application for relief pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED.

DATE: November 19, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[6] Petitioner argues there was no tactical reason to keep Petitioner from testifying, in that Mr. Wood had already brought the substance of the rebuttal witness's damaging testimony to the jury's attention during voir dire. However, questions asked during voir dire are not evidence; the rebuttal witness's testimony, on the other hand, could have made Petitioner's accident defense far less believable.

10

11